1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    LORI LEE CRULL,

                                              NO:  2:13-CV-426-RMP
8                         Plaintiff,

           v.                                 ORDER GRANTING MOTION FOR
9                                             SUMMARY JUDGMENT

10   STATE OF WASHINGTON
     DEPARTMENT OF SOCIAL &
     HEALTH SERVICES; KYLE
11   BUNGE, in his official and individual
     capacity; and STEVE M. LOWE, in his
12   official and individual capacity,

13                        Defendants.

14

15         BEFORE THE COURT is Defendants' Motion for Summary Judgment,

16   **ECF No. 29**. The Court has reviewed the filings, the response memorandum (ECF

17   No. 58), the reply memorandum (ECF No. 68), has heard from counsel, and is fully

18   informed.

19   //

20   //

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

Plaintiff Lori Lee Crull owned and operated the Little Lambs Learning Center (hereinafter "LLLC") from 2008 to 2011. ECF No. 59 at 2. The LLLC was a daycare facility licensed by the Washington State Department of Early Learning ("DEL"). ECF No. 30 at 2. Many of Ms. Crull's clients had their children's daycare compensated by the State through the Working Connections Child Care program. ECF No. 59 at 2. Ms. Crull contends that her clientele included a large proportion of children who required special services. *Id.* at 3.

DEL is a Washington State administrative agency charged with discretionary authority regarding issuing, suspending, revoking, or denying childcare licenses, as well as issuing compliance and enforcement orders requiring daycare facilities to follow licensing rules and regulations. ECF No. 30 at 2. As part of its statutory mandate, DEL conducts inspections at state licensed child care facilities, including Ms. Crull's LLLC. *Id.*

DEL does not conduct criminal fraudulent billing investigations. *Id.* at 6. If DEL suspects that a licensed daycare facility is engaged in fraudulent billing practices, DEL can refer its concerns to the Washington State Office of Fraud and Accountability ("OFA"), which then initiates a criminal fraud investigation. *Id.* OFA is an administrative agency under the umbrella of the Washington State

Department of Social and Health Services ("DSHS").[1] *Id.* at 8. The Assistant

Director of DEL, Robert McLellan, was the DEL administrator charged with

discretionary authority to refer suspected fraudulent billing to OFA for criminal

investigation. *Id.* at 6.

In 2011, Ms. Crull was subject to three separate Facility Licensing

Compliance Agreements with DEL. *Id.*; ECF No. 59 at 21. The underlying

complaints involved insufficient first aid kits, damaged facilities, employee

background check delays, and the incorrect use of a medicine as a cleaning agent.

ECF No. 59 at 21.

In 2011, DEL was considering denying Ms. Crull's license renewal due to

various concerns about the LLLC's operations. ECF No. 30 at 2. Ms. Crull already

had received the maximum four interim licenses permitted by DEL. *Id.* Over time,

DEL had collected a number of complaints, from both parents and other persons,

about the LLLC. *Id.* at 3–5. Ms. Crull notes that, while these complaints existed,

the vast majority were found to be "not valid" or unsubstantiated. ECF No. 59 at

7–19. DEL also suspected that Ms. Crull was not providing the State with accurate

---

[1] Defendants originally contended that DEL was part of DSHS. ECF No. 30 at 12.

However, starting in June 2010, DEL became a separate executive branch agency

of the State of Washington. ECF No. 69 at 9.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 3

information and was overbilling for daycare services not being provided, including

for children who did not attend the LLLC and field trips which did not in fact

occur.[2] ECF No. 30 at 5. Given the available information, DEL determined that

Ms. Crull did not satisfy the suitability and character license requirements, and

accordingly did not approve renewal of Ms. Crull's license. *Id.* at 7.[3]

Robert McLellan reported DEL's evidence of fraud, concerns, and third-

party complaints to OFA for investigation. *Id.* DEL turned over the records and

information available to DEL relating to the suspected fraud. *Id.*

---

[2] Ms. Crull disputes a number of factual allegations made by Defendants

concerning DEL's thought process and rationale underlying the agency's decision

to disqualify her license. *See* ECF No. 59 at 21–22. However, disputes as to DEL's

license disqualification decision are not material to the case at hand as DEL is not a

defendant in this lawsuit.

[3] Ms. Crull disputes the basis of DEL's decision to issue its letter of

disqualification. ECF No. 59 at 24. However, as DEL is not a party to this lawsuit,

its rationale in denying Ms. Crull a license renewal is immaterial. Ms. Crull's

allegations concerning OFA's role in DEL's decision will be considered

separately. *See* Part V(B)(3).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 4

At the time DEL decided to issue Ms. Crull a letter of disqualification, OFA's fraud investigation was pending. *Id.* OFA was in the process of obtaining a search warrant to be executed on the LLLC. *Id.* DEL, after consulting with OFA, stayed issuance of Ms. Crull's letter of disqualification so it would arrive simultaneously with OFA's execution of the search warrant.[4] ECF No. 69 at 9. The agencies believed this tactic would reduce the possibility of Ms. Crull's destroying or removing records relevant to OFA's investigation. *Id.*

DEL issued Ms. Crull the letter of disqualification on December 20, 2011.[5] ECF No. 37-2. The letter of disqualification notified Ms. Crull of her

---

[4] Although Defendants allege that OFA was not consulted or involved in the decision by DEL to issue a letter of disqualification, ECF No. 30 at 8, emails between DEL and OFA officials demonstrate that the timing concerning the issuance of the letter of disqualification was discussed between the two agencies. *See* ECF No. 60-23, 24.

[5] Ms. Crull alleges that she did not receive notice of the denial of her license renewal under a letter dated February 10, 2012, ECF No. 60-19, which Ms. Crull did not receive until late March 2012. ECF No. 59 at 25. However, the letter Ms. Crull points to, ECF No. 60-19, notes that Ms. Crull received the DEL disqualification letter on December 20, 2011. *Id.* at 1. Additionally, despite stating

administrative appeal rights should she choose to challenge DEL's licensing

decision. *Id.* at 2. The letter advised Ms. Crull that her license renewal had been

denied due to a variety of reasons including that she did not use appropriate

discipline and that she was uncooperative with child protective services. *Id.* at 1.

The letter also noted that Ms. Crull was "currently under investigation by the

Office of Fraud and Accountability for theft."[6] *Id.* Ms. Crull alleges that, despite

the division of responsibilities between the agencies, DEL's licensing decision was

largely based on OFA's fraud investigation. ECF No. 59 at 24–26.

Instead of appealing the DEL license disqualification decision, Ms. Crull

voluntarily entered into a settlement agreement. *See* ECF No. 37-1. In the

_____

that she was not notified until February 10, 2012, Ms. Crull mentions that the

December 20, 2011, letter advised her that she was disqualified from working with

children. ECF No. 59 at 26. As the exact date Ms. Crull received a disqualification

letter from DEL is immaterial, this dispute does not raise a genuine issue of

material fact.

[6] Although Ms. Crull correctly notes that the February 20, 2012, letter she received

only notes that she was under investigation by OFA for theft, the December 20,

2011, letter of disqualification listed several additional reasons underlying DEL's

decision to deny her license renewal. ECF No. 37-2 at 2.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 6

settlement agreement, DEL withdrew the letter disqualifying Ms. Crull from working with children in child care facilities. *Id.* at 1. In return, Ms. Crull agreed to voluntarily relinquish her child care license. *Id.* Ms. Crull was barred from being either a director or owner of a child care facility until such time as she regained her license. *Id.* at 2. The agreement noted that "Ms. Crull agrees not to seek a child care license of any kind until December 21, 2016 or upon written documentation that the investigation into her billing practices is complete, whichever is sooner." *Id.* As part of the agreement, Ms. Crull agreed to the following release of liability provision:

> As and for consideration for this agreement, Lori Crull and her successors and/or assigns hereby agrees to release and forever discharge the Department of Early Learning for the State of Washington and its officers, agents, employees, agencies and from any and all existing and/or future liability, claims, damages and causes of action of any nature whatsoever arising out of occurrences, or events that are the subject of this agreement. IT IS UNDERSTOOD AND AGREED that this provision is intended to cover all actions, causes of action, claims and demands for, upon, or by reason of any economic and/or non-economic damages, personal bodily injuries, sickness, disease, and damage to or other damage or injury of any nature which may be traced either directly or indirectly to the occurrence(s) and/or events giving rise to this agreement, as now appearing or as may appear at any time in the future, regardless of how remotely they may be related to the aforesaid matter.

*Id.* at 3.

Defendant Kyle Bunge was the investigator assigned by OFA to investigate the fraud referral from DEL. ECF No. 30 at 12. Mr. Bunge relied upon the

information contained in an audit conducted of the LLLC's records which

documented a number of instances of suspected fraud.[7] *Id.* Mr. Bunge signed the

affidavit to obtain the search warrant executed on the LLLC. *Id.*

Defendant Steve Lowe was Mr. Bunge's supervisor and the Senior Director

of OFA. *Id.* at 13. Mr. Lowe directed that a search warrant be pursued, handled

media contacts relating to the search warrant, and ordered that the investigation be

referred to both federal and state prosecution agencies. *Id.* The United States

Attorney for the Eastern District of Washington has declined to press charges

against Ms. Crull. ECF No. 60-28. The Spokane County Prosecuting Attorney's

Office has not yet determined whether charges will be filed. ECF No. 30 at 16.

OFA executed a search warrant on the LLLC on December 20, 2011. ECF

No. 59 at 4; *see also* ECF No. 40-1. OFA informed the media that a fraud

investigation was pending and that a search warrant was being executed on the

---

[7] Ms. Crull disputes that there was evidence of fraud, stating that "overpayments

through DSHS' Social Service Payment System ("SSPS") are not uncommon, nor

are they fraudulent." ECF No. 59 at 35. This lawsuit, however, concerns

Defendants' conduct and tactics during their investigation. *See generally* ECF No.

1-1. Therefore, this Court need not determine whether Ms. Crull was in fact

defrauding the State of Washington to adjudicate the instant motion.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 8

LLLC.[8] ECF No. 30 at 17. This resulted in media coverage both concerning the investigation and the execution of the search warrant on the LLLC. ECF No. 40 at 4; ECF No. 59 at 28. OFA concluded its investigation on September 5, 2012. *See* ECF No. 39-1.

Ms. Crull filed for bankruptcy on January 17, 2013. ECF No. 59 at 39. On April 9, 2013, the Bankruptcy Court signed an order approving the employment of legal counsel to pursue the tort claims raised in this lawsuit. ECF No. 62-1.

Ms. Crull filed the instant complaint against the DSHS, Kyle Bunge, and Steve Lowe in Spokane County Superior Court on December 13, 2013. ECF No. 1-

---

[8] Based on the evidence submitted by Ms. Crull, this Court notes five online news articles that discuss Defendants' investigation into the LLLC. *See* ECF No. 60-6, 7, 8, 9, 10. Ms. Crull has, however, not provided any evidence of Defendants holding a press conference or what may have been discussed or disclosed at such a meeting. While Mr. Lowe notes that he "was the point person for OFA for media contact" and that "[t]he media contacted OFA with respect to the Little Lambs Learning Center investigation," ECF No. 40 at 4, Ms. Crull only has submitted the five online news articles referenced above. In addition to the five news articles, Mr. Lowe generally relays that "[t]he information I reported to the media identified that there were 'allegations' of fraud and an investigation was pending." *Id.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 9

1. Defendants removed the action to the District Court for the Eastern District of Washington on December 23, 2013. ECF No. 1. Defendants filed the instant motion for summary judgment on September 18, 2015. ECF No. 29. Ms. Crull filed a response memorandum on October 16, 2015. ECF No. 58. Defendants filed a reply memorandum on November 6, 2015. ECF No. 68. This Court heard oral argument on November 19, 2015. ECF No. 78.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set out specific facts showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(c)(2). Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II. Whether Ms. Crull is Barred from Alleging Claims Against Defendants by the Release of Liability in the Settlement Agreement

Defendants argue that Ms. Crull's settlement agreement with DEL represented a full and complete resolution of her license disqualification. Defendants attempt to use the release of liability provision as a shield to argue that Ms. Crull released all claims against the State of Washington, DSHS, DEL, and all other State agencies and employees. ECF No. 29 at 8. Ms. Crull contends that the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 11

settlement agreement only releases DEL and its employees from liability. ECF No. 58 at 5.

The settlement agreement does not support Defendants' position. Ms. Crull agreed to release "the Department of Early Learning ***for*** the State of Washington and ***its*** officers, agents, employees [and] agencies." ECF No. 37-1 at 3 (emphasis added). This language, restricted to DEL, indicates that the provision only released claims against DEL, not the State of Washington as a whole.

Defendants rely on the second sentence, which defines the provision's scope as "intended to cover all actions . . . which may be traced either directly or indirectly to the occurrence(s) and/or event(s) giving rise to this agreement." *Id.* This language merely defines the scope of Ms. Crull's waiver of potential claims against DEL. The Court agrees with Defendants that "plaintiff waived any right to a claim of damages as a result of the loss of her license against DEL 'and its agencies.'" ECF No. 68 at 7. However, DEL is not a defendant in the instant lawsuit; instead, the Defendants are DSHS, and OFA employees Kyle Lowe and Steve Bunge. *See generally* ECF No. 1-1. Nor are any Defendants "officers, agents, employees, [or] agencies" of DEL.

A plain reading of the settlement agreement's release of liability provision demonstrates that it is limited to DEL, and not the State of Washington as a whole.

1   As such, the Court will not find that Ms. Crull is barred from bringing this lawsuit

2   by the settlement agreement.

3   **III.    Whether the Doctrine of Collateral Estoppel Bars Ms. Crull's Action**

4           Defendants argue that collateral estoppel prevents relitigation of Ms. Crull's

5   claims as they were resolved by a final order or disposition in an administrative

6   proceeding. ECF No. 29 at 9. Ms. Crull contends that collateral estoppel does not

7   apply because Defendants were not parties to the settlement agreement. ECF

8   No. 58 at 10.

9           In determining whether collateral estoppel applies, this Court looks to

10  Washington State law. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82

11  (1982) (noting how 28 U.S.C. § 1738 commands federal courts "to accept the rules

12  chosen by the State from which the judgment is taken"). In Washington,

13          the party asserting [collateral estoppel] must prove: (1) the issue
            decided in the prior adjudication is identical with the one presented in
14          the second action; (2) the prior adjudication must have ended in a final
            judgment on the merits; (3) the party against whom the plea is asserted
15          was a party or in privity with the party to the prior adjudication; and
            (4) application of the doctrine does not work an injustice.
16
17  *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262–63 (1998).

18  "Collateral estoppel precludes a party from relitigating an issue of fact that the

19  party already has litigated to final judgment." *Miles v. State, Child Protective*

20  *Servs. Dept.*, 102 Wn. App. 142, 153 (2000).

The doctrine of collateral estoppel does not bar Ms. Crull's claims. The settlement agreement between Ms. Crull and DEL was neither an "adjudication" nor a "final judgment on the merits." The settlement agreement noted that "Ms. Crull does not admit the allegations contained in the December 20, 2011 letter" and "the Department does not concede that there are no grounds to disqualify Mr. [*sic*] Crull from having unsupervised access to child care children." ECF No. 37-1 at 3. As such, the settlement agreement did not pass judgment upon the merits of Ms. Crull's case: both parties merely agreed, for whatever reason, that a settlement was an appropriate resolution.

Even if the settlement agreement had constituted a "final judgment on the merits," the issues in the instant lawsuit are distinguishable. The settlement agreement resolved issues arising out of DEL's decision to disqualify Ms. Crull's child care license while the instant lawsuit raises numerous allegations against DSHS concerning the OFA fraud investigation into Ms. Crull's billing practices. Collateral estoppel does not bar Ms. Crull's claims.

**IV.    Whether Ms. Crull is the Real Party in Interest**

Defendants argue that Ms. Crull, as a debtor in chapter 7 bankruptcy, is not the real party in interest and cannot prosecute claims accrued on behalf of the bankruptcy estate. ECF No. 29 at 34.

1    "The court may not dismiss an action for failure to prosecute in the name of

2    the real party in interest until, after an objection, a reasonable time has been

3    allowed for the real party in interest to ratify, join, or be substituted into the

4    action." Fed. R. Civ. P. 17(a)(3). Here, the bankruptcy trustee has authorized and

5    ratified Ms. Crull's pursuit of this action. ECF No. 58 at 38; *see also* ECF No. 62-

6    1. Ms. Crull therefore has authority to prosecute these claims.

7    **V.  Whether Genuine Issues of Material Fact Preclude Summary Judgment
     on Ms. Crull's Civil Rights Cause of Action Under 42 U.S.C. § 1983**

8

9    To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the

10   violation of a right secured by the Constitution and laws of the United States, and

11   must show that the alleged deprivation was committed by a person acting under

12   color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that

13   (1) DSHS, Steve Lowe in his official capacity, and Kyle Bunge in his official

14   capacity are not "person[s]" as under § 1983 and (2) that Ms. Crull has failed to

15   demonstrate that Steve Lowe and Kyle Bunge, in their personal capacities, violated

16   a right secured by the Constitution. ECF No. 29 at 10–17; ECF No. 68 at 5–13.

17   **A.  Sovereign Immunity and the Definition of "Person" Under § 1983**

18   Defendants have waived their Eleventh Amendment immunity by

19   affirmatively choosing to remove this action to federal court. *See Lapides v. Bd. of

20   Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("We conclude that the

     State's action joining the removing of this case to federal court waived its Eleventh

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 15

Amendment immunity."). A waiver of Eleventh Amendment immunity does not, however, automatically render a party susceptible to suit under § 1983. A plaintiff's remedy under § 1983 is limited to suits against "person[s]." 42 U.S.C. § 1983. Under *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), neither the State nor "arms of the state" nor state officials acting in their official capacities are "person[s]" liable to suit under § 1983. *Id.* at 66, 70–71.

Ms. Crull urges this Court to find that Defendants, by removing this action to federal court and waiving their Eleventh Amendment immunity, have implicitly consented to suit under § 1983. ECF No. 58 at 13. However, States, arms of the State, and state officials in their official capacities are not "person[s]" under § 1983, and therefore are not liable to suit. *See Will*, 491 U.S. at 66, 70–71. Removing an action to federal court does not automatically transmute an actor into a "person." *See, e.g.*, *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).

During oral argument, Ms. Crull alleged that her § 1983 cause of action against DSHS and the OFA officers in their official capacities should not be dismissed as she had moved for injunctive relief against all Defendants. This alleged injunction was to enjoin Defendants from making any future stigmatic statements about Ms. Crull to the press. However, as Ms. Crull did not demand injunctive relief in her complaint, *see generally* ECF No. 1-1, the Court will not

1    allow Ms. Crull to belatedly concoct reasons to maintain her § 1983 cause of action

2    against Defendants who are not included within the scope of "person."

3        As waiving Eleventh Amendment immunity does not render a party liable to

4    suit under § 1983 that would not otherwise be so, the Court **dismisses with**

5    **prejudice** Ms. Crull's § 1983 civil rights cause of action against DSHS, Steve

6    Lowe in his official capacity, and Kyle Bunge in his official capacity.

7        **B. Ms. Crull's Alleged Violations of Constitutional Rights**

8        Defendants Steve Lowe and Kyle Bunge, in their individual capacities, are

9    "person[s]" who are liable to suit under § 1983. Ms. Crull puts forth a number of

10   theories, each alleging a violation of the Fourteenth Amendment Due Process

11   Clause for either (1) depriving her of a property or liberty interest or (2) failing to

12   afford her procedural protections required by law. ECF No. 58 at 14. The alleged

13   constitutional rights and interests raised by Ms. Crull include: (1) the right to be

14   free from stigma which alters an existing right; (2) the right to notice and a hearing

15   before criminal charges are pursued by DSHS; (3) the right to pursue her chosen

16   occupation free from government blacklisting; and (4) the right to the timely return

17   of her property seized by DSHS. *Id.*

18

19

20

### 1. Due Process Interest in Reputation and Being Free From Government-Imposed Stigma

Ms. Crull argues that Defendants, through their allegedly overzealous criminal investigation, afflicted her with a stigma which has both damaged her reputation and undermined her ability to carry on her business. *Id.*

The Supreme Court first recognized a constitutional due process interest in reputation in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971). In *Constantineau*, a Wisconsin police chief caused a notice to be posted in retail liquor stores advising merchants that all sales or gifts of liquor were forbidden to Ms. Constantineau. *Id.* at 435. Ms. Constantineau was given neither notice nor an opportunity to be heard before the notices were publically posted. *Id.* The Court noted that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437.

The Court elaborated on the procedural protections afforded an individual's reputation in *Paul v. Davis*, 424 U.S. 693 (1976). In *Paul*, a police chief alerted local merchants to possible shoplifters by distributing a flyer with various mugshots, including that of Davis. *Id.* at 695. While Davis had been arrested for shoplifting, he had not been convicted of the charge. *Id.* at 696. The Court noted that its prior decisions did not establish that "reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 18

itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701.

In essence, an allegedly defamatory statement or action by a public official is not automatically a deprivation of liberty or property without due process of law. *Id.* at 702. For example, the Court interpreted *Constantineau* as holding that procedural due process protections were implicated as the notice deprived Ms. Constantineau of a right she had previously enjoyed: the ability to buy liquor. *Id.* at 708. In contrast, the Court rejected Davis' allegations as he merely "claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge." *Id.* at 713.

Following *Paul*, constitutional allegations of injury to reputation require both some official stigmatic conduct and a "plus," usually the denial of a tangible interest such as employment. *Id.* at 701. To sufficiently allege a claim, "the plaintiff must show that the injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right." *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006) (emphasis in original). The plaintiff must also demonstrate "that the injury to reputation *caused* the denial of a federally protected right." *Id.* ("Hart has not proffered any evidence that he lost his job *because of* the defamatory statements.") (emphasis in original). Put another way, a plaintiff must show some "change of legal status" as a result of the alleged government defamation. *See*

*Miller v. California*, 355 F.3d 1172, 1179 (9th Cir. 2004) (no due process violation where plaintiff was incorrectly placed on child abuse index as plaintiff was "not legally disabled from doing anything [he] otherwise could do").

Ms. Crull has articulated a number of different tangible interests that could constitute the "plus" required in conjunction with the alleged defamatory conduct. First, Ms. Crull claims that that Defendants' investigation into the fraud allegations was stigmatic and the denial of her license was the "plus" necessary to allege a constitutional violation. ECF No. 58 at 16. Second, Ms. Crull alleges that Defendants are purposely keeping their investigation open, barring her from reapplying for a child care license. *Id.* Finally, during oral argument, Ms. Crull contended that the ongoing denial of her chosen occupation constituted the required "plus."

As to Ms. Crull's license disqualification, the Court does not find that Ms. Crull has demonstrated a genuine issue of material fact simply due to the factual timeline as it has been presented to the Court. As alleged by Ms. Crull, Defendants' actions that allegedly caused public stigma and damage to reputation only occurred after the search warrant was executed on her business. *See* ECF No. 58 at 16. DEL made the decision to disqualify Ms. Crull's license before, or at least simultaneously to, the execution of the search warrant. *Compare* ECF No. 37-2 *with* ECF No. 59 at 4 (DEL's letter of disqualification was dated December 20,

2011, the same day OFA executed the search warrant on the LLLC). It chronologically cannot be the case that any stigma resulting from Defendants' allegedly unnecessary involvement of media during the execution of the search warrant caused DEL's decision to disqualify Ms. Crull's day care license.

Ms. Crull's second allegation concerning the delay in concluding Defendants' investigation also fails. Defendants' allegedly stigmatic statements and conduct arose from the publication of Defendants' investigation, not from any delay in closing the investigation. Ms. Crull also presents no evidence demonstrating that any alleged unnecessary delay was stigmatic. Further, Ms. Crull has failed to demonstrate that the ability to re-apply for a child care license, as opposed to the license itself, is a "tangible interest" that can qualify as a "plus" under *Paul*. A theory based on unnecessary delay is especially problematic considering that OFA concluded their investigation on September 5, 2012, less than a year after the search warrant was executed on the LLLC. *See* ECF No. 39-1. As above, the allegedly improper delay, if it was stigmatic at all, did not cause the loss of Ms. Crull's license.

During oral argument, Ms. Crull proffered an additional, yet related, theoretical tangible interest: that the alleged stigma had (and continued to) cause the ongoing denial of her chosen occupation. Initially, the Court is unclear concerning how the amorphous right to pursue one's chosen occupation

1  substantively differs from Ms. Crull's allegations regarding her license

2  disqualification, considering that both result in the same prohibition. Regardless,

3  Ms. Crull agreed in her settlement agreement with DEL "not to seek a child care

4  license of any kind until December 21, 2016 or upon written documentation that

5  the investigation into her billing practices is complete, whichever is sooner." ECF

6  No. 37-1 at 2.

7          Defendants' investigation into Ms. Crull's billing practices concluded on

8  September 5, 2012. ECF No. 39-1. A constitutional due process claim for the

9  violation of a person's occupational liberty is limited to extreme cases, such as a

10 "government blacklist." *See Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 997 (9th

11 Cir. 2007) (quoting *Olivieri v. Rodriguez*, 112 F.3d 406, 408 (7th Cir. 1997)). The

12 Court is unwilling to find that Ms. Crull was unlawfully "excluded from her

13 occupation", *see id.* (quoting *Olivieri*, 122 F.3d at 408), when she agreed to abide

14 by an exclusionary limitation in a settlement agreement.

15         Further, similar to Ms. Crull's other allegations, any ongoing denial of

16 Ms. Crull's chosen occupation is unrelated to Ms. Crull's alleged injury to

17 reputation. Even assuming that Defendants' media reports were stigmatic,

18 Ms. Crull has failed to demonstrate that any resulting injury to reputation caused

19 the alleged ongoing denial of her chosen occupation. In essence, Ms. Crull has

20 failed to provide any evidence as to *how* she was deprived of her chosen

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 22

occupation *because of* the allegedly defamatory statements. *See Hart*, 450 F.3d at 1070. As such, the Court finds that Ms. Crull has not alleged sufficient facts to demonstrate a genuine issue of material fact as to any constitutional injury to reputation resulting from Defendants' allegedly stigmatic conduct.

## 2. Right to Notice and Hearing Before Criminal Charges Are Pursued

Ms. Crull alleges that Defendants failed to afford her procedural protections guaranteed by the Fourteenth Amendment Due Process Clause when they did not provide her with notice of the criminal investigation and an opportunity to be heard before charges were referred to both federal and state prosecuting agencies.

First, Ms. Crull argues that RCW 43.20A.660 requires Defendants to provide her with notice and an opportunity to be heard. ECF No. 58 at 17. RCW 43.20A.660 provides:

> [b]efore any violation of chapter 43.20A RCW is reported by the secretary to the prosecuting attorney for the institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his or her views to the secretary, either orally or in writing, with regard to such contemplated proceeding.

RCW 43.20A.660.

The Court finds that RCW 43.20A.660 is inapplicable to this matter. The procedural protections required by RCW 43.20A.660 are only mandated where DSHS is referring violations of chapter 43.20A to a prosecuting agency. RCW 43.20A.660. Chapter 43.20A establishes DSHS as an administrative agency and

1    contains provisions that include the Secretary's delegation of powers and duties,

2    RCW 43.20A.110, a limitation on compensation for per diem or mileage, RCW

3    43.20A.390, and the establishment of the state council on aging. RCW

4    43.20A.680. While chapter 43.20A does mandate that DSHS perform background

5    checks on individuals seeking to care for children, RCW 43.20A.710, the provision

6    does not address criminal allegations of fraud, theft, and forgery.

7    Ms. Crull cites RCW 74.04.290 as evidence of the two provisions'

8    interconnectivity. ECF No. 58 at 17. RCW chapter 74.04 creates and governs the

9    functions of OFA. RCW 74.04.290, however, addresses investigative tools

10   available to OFA and only references chapter 43.20A in that "[s]ubpoenas issued

11   under this power shall be under RCW 43.20A.605." RCW 74.04.290. Ms. Crull

12   fails to demonstrate how this provision supports the argument that Defendants

13   referred a violation of chapter 43.20A to the prosecuting agencies. RCW

14   43.20A.660 is only relevant where violations of chapter 43.20A are at issue. RCW

15   74.04.290 does not change the plain meaning of the provision.

16   Defendants' investigation was into allegations of theft and forgery. *See* ECF

17   No. 39 at 2. It was concerning these charges that OFA referred their investigation

18   to both federal and state prosecuting agencies. *See id.* at 4. These offenses are

19   criminal violations under chapter 9A. *See* RCW 9A.56.030 (First Degree Theft);

20   RCW 9A.56.040 (Second Degree Theft); RCW 9A.60.020 (Forgery). As RCW

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 24

43.20A.660 only applies when DSHS refers violations of chapter 43.20A, Ms. Crull was not entitled to the provision's procedural safeguards.

Ms. Crull also alleges that her due process rights were violated by Defendants' failure to communicate or meet with her during their investigation. ECF No. 58 at 18. However, Ms. Crull does not cite to any authority to support her position, and the Court concludes that there is no due process right to an opportunity to be heard while an investigation is ongoing but before formal charges have been filed. If Ms. Crull were correct, any potential criminal defendant would have the constitutional right to a hearing before a police officer forwarded any investigation or report to a prosecuting authority. As there is no established due process right to receive notice and a hearing *before* criminal charges are filed, Defendants were not required to meet with Ms. Crull before referring their fraud investigation to state and federal prosecuting agencies.

### 3. Right to Pursue Chosen Occupation Free From Government Blacklisting

Ms. Crull alleges Defendants violated her substantive due process rights as she "is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." ECF No. 58 at 18. Ms. Crull argues that Defendants' overzealous investigation, including unexplained delay and improper coordination between DEL and Defendants concerning her license disqualification, amount to government blacklisting.

The Supreme Court has "indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). This amorphous right has only been addressed in a few circumstances. *See id.* at 293 (holding that an attorney's "Fourteenth Amendment right to practice one's calling [was] not violated by the execution of a search warrant, whether calculated to annoy or even to prevent consultation with a grand jury witness"). The Court has "never held that the right to pursue work is a fundamental right." *Sagana v. Tenorio*, 384 F.3d 731, 742 (9th Cir. 2004).

The Ninth Circuit has "held that a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist*, 478 F.3d at 997. Constitutional claims for the violation of occupational liberty are, however, limited to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Id.* at 997–98 (quoting *Olivieri*, 122 F.3d at 408).

Ms. Crull urges the Court to equate her situation to that in *Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir. 1988). In *Benigni*, police officers continuously harassed the plaintiff's bar and customers until the plaintiff was forced to sell his business. *Id.* at 475 (listing daily bar checks, following customers leaving the bar, staking out customers, and investigating an alleged bomb threat the day after the plaintiff filed suit). The court held that "the evidence before the jury was sufficient to support a conclusion that excessive and unreasonable police conduct was intentionally directed towards Benigni's bar to force him out of business." *Id.* at 478.

Ms. Crull alleges that Defendants' overzealous investigation violated her right to occupational liberty as (1) Defendants' investigation was the primary basis for DEL's license disqualification and (2) Defendants' delay in concluding the investigation keeps Ms. Crull from reapplying for a child care license. ECF No. 58 at 21. Neither is sufficient to allege a violation of a constitutional right.

Defendants deny that OFA had any role in Ms. Crull's license disqualification, arguing that licensing decisions are solely the responsibility of DEL. ECF No. 29 at 16. Ms. Crull claims that collusion is demonstrated by a number of emails between DEL and OFA personnel, *see* ECF No. 60-23, 24, as well as the settlement agreement and letter of disqualification, both of which mention OFA's fraud investigation. ECF No. 37-1, 2. Ms. Crull also asserts that an

1  unidentified OFA official informed her that her license was being disqualified in

2  connection with OFA's investigation. ECF No. 60 at 19.

3        As noted by Ms. Crull, DEL officials did consult with OFA officials about

4  the LLLC in the referenced emails. *See* ECF No 60-23 at 3 ("We had a good

5  meeting at DEL yesterday and Little Lambs was discussed . . . ."); *id.* at 6 ("I have

6  a meeting with DEL I would like for Kathleen to attend with me. It will be a

7  decision on how to proceed with the case as DEL wants to move forward with its

8  licensing issues."). Defendants argue that any contact between the two agencies

9  was merely a preventative measure to stop Ms. Crull from destroying records prior

10  to the execution of the search warrant. ECF No. 69 at 9.

11        However extensive OFA's involvement with DEL's licensing decision was,

12  it was nevertheless DEL's discretionary statutory authority to deny Ms. Crull a

13  license renewal. As it was DEL, not Defendants, that denied Ms. Crull a license

14  renewal, it consequently would be DEL who violated Ms. Crull's alleged right to

15  occupational liberty, not Defendants Lowe and Bunge. As discussed previously,

16  DEL is not a defendant in this lawsuit but was the entity identified in Ms. Crull's

17  release of liability. *See* ECF No. 37-1 at 3. Therefore, the Court finds that

18  Defendants Lowe and Bunge did not violate Ms. Crull's right to pursue an

19  occupation based on a licensing decision made by an entirely distinct

20  administrative agency.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 28

1    Ms. Crull's allegation concerning investigatory delay also fails. The

2  Supreme Court has addressed pre-accusatorial delay in the criminal context. In

3  *United States v. Marion*, 404 U.S. 307 (1971), the Court held that the pre-

4  indictment delay by the Government did not violate the Due Process Clause as

5  "[n]o actual prejudice to the conduct of the defense is alleged or proved, and there

6  is no showing that the Government intentionally delayed to gain some tactical

7  advantage over appellees or to harass them." *Id.* at 325. Prosecutors "are under no

8  duty to file charges as soon as probable cause exists but before they are satisfied

9  they will be able to establish the suspect's guilt beyond a reasonable doubt."

10  *United States v. Lovasco*, 431 U.S. 783, 791 (1977).

11    Ms. Crull alleges that Defendants' delay in concluding the fraud

12  investigation was solely to deny her the opportunity to re-apply for a child care

13  license pursuant to the settlement agreement with DEL. Ms. Crull argues that

14  Defendants' conduct was arbitrary and irrational. *See* ECF No. 58 at 21. However,

15  in the analogous criminal context, even lengthy pre-indictment delay does not

16  violate due process without a showing of nefarious intent.

17    Ms. Crull's only evidence that Defendants meant to "harass" her is

18  speculative and drawn by inference from the four year delay itself. Further,

19  Defendants' investigation into Ms. Crull's billing practices concluded on

20  September 5, 2012, less than a year after the search warrant was executed on the

LLLC. ECF No. 39-1. Additionally, as Ms. Crull agreed to the restrictive time limitation in the settlement agreement with DEL for applying for another license, the Court is unwilling to find that Ms. Crull's constitutional rights were violated by a provision to which Ms. Crull consented.

Overall, unlike in *Benigni*, Ms. Crull has failed to present any evidence that Defendants' actions were excessive, unreasonable, or motivated by any impropriety or nefarious purpose. Ms. Crull asks the Court to credit her inferences and allegations of wrongdoing. Unsupported allegations and conclusions, at the summary judgment stage, are insufficient to demonstrate a genuine issue of material fact necessary to sustain a claim for the violation of occupational liberty. Therefore, the Court finds that no genuine issue of material fact exists concerning Ms. Crull's occupational liberty claim, which consequently cannot support a § 1983 cause of action.

### 4. Right to Timely Return of Property Seized by DSHS

Ms. Crull alleges that her constitutional rights were violated by Defendants' failure to timely return records seized pursuant to the search warrant. ECF No. 58 at 14. However, as Ms. Crull does not address this claim in any further detail, this allegation is insufficient to state the deprivation of a constitutional right under § 1983.

**5. Conclusion**

As the Court finds that Ms. Crull has failed to allege a constitutional violation attributable to Defendants Steve Lowe or Kyle Bunge in their individual capacities, Ms. Crull's § 1983 cause of action is **dismissed with prejudice**.

**VI.    State Law Claims**

Ms. Crull alleges numerous Washington State tort law causes of action against Defendants. Ms. Crull alleges that Defendants are liable for (1) negligence; (2) negligent infliction of emotional distress; (3) intentional infliction of emotional distress; (4) interference with business relationships; (5) defamation; (6) invasion of privacy; (7) conversion; and (8) trespass. ECF No. 1-1 at 6–11.

The parties agree that this Court should retain supplemental jurisdiction over the tort causes of action alleged by Ms. Crull. ECF No. 29 at 21; ECF No. 58 at 25. Defendants argue that Ms. Crull's tort claims each should be dismissed for either a failure to state a claim upon which relief can be granted or the absence of a genuine issue of material fact. ECF No. 29 at 21. Ms. Crull argues that genuine issues of material fact preclude summary judgment of the majority of her causes of action. ECF No. 58 at 25. Ms. Crull **voluntarily dismisses** her conversion and trespass causes of action. *Id.* at 38.

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

## A. Whether the Court Should Exercise Supplemental Jurisdiction Over Ms. Crull's State Tort Causes of Action

Under 28 U.S.C. § 1367(c), a district court

may decline to exercise supplemental jurisdiction over a claim under subsection (a) if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The parties each request that the Court retain jurisdiction over Ms. Crull's state tort causes of action. ECF No. 29 at 21; ECF No. 58 at 25. Due to the advanced nature of the lawsuit, the Court will exercise supplemental jurisdiction over Ms. Crull's Washington State tort causes of action in the interest of judicial economy.

## B. Whether Ms. Crull Failed to Exhaust Administrative Remedies

Defendants argue that Ms. Crull's tort causes of action should be dismissed due to Ms. Crull's failure to exhaust administrative remedies. ECF No. 29 at 22. Defendants claim that these allegations should have been adjudicated in the available administrative appellate review of the disqualification of Ms. Crull's child care license. *Id.* at 23. Ms. Crull argues that (1) as DEL disqualified her license based on OFA's ongoing fraud investigation, an administrative hearing with DEL would be futile as Ms. Crull could not disprove that an investigation was

pending and (2) that many of her claims are based on DSHS' investigation, not on

DEL's licensing decision. ECF No. 58 at 26–27.

Under Washington law:

[e]xhaustion of administrative remedies is required when (1) a claim is cognizable in the first instance by an agency alone, (2) the agency's authority establishes clearly defined machinery for the submission, evaluation, and resolution of complaints by aggrieved parties, and (3) the relief sought can be obtained by resort to an exclusive or adequate administrative remedy.

*Phillips v. King Cty.*, 87 Wn. App. 468, 479 (1997).

Ms. Crull's tort causes of action arise under Washington State common law.

*See* ECF No. 1-1 at 6–11. The administrative process available to Ms. Crull was

limited to reconsideration of DEL's decision to deny Ms. Crull's license renewal.

*See* ECF No. 37-2 at 2 (noting that "you may request a reconsideration of this

decision by DEL" and "[t]o request a hearing . . . request a hearing in writing and

state the reason for contesting the decision"). There is no indication that either

DEL, when reconsidering the licensing decision, or the Office of Administrative

Hearings could adjudicate the common law tort claims raised by Ms. Crull in this

lawsuit. The causes of action alleged against Defendants arise from DSHS'

investigation into the fraud allegations, not DEL's licensing decision. As such, the

Court will not dismiss the common law tort causes of action on the basis of failure

to exhaust administrative remedies.

### C. Whether Genuine Issues of Material Fact Preclude Summary Judgment on Ms. Crull's Negligent Investigation Cause of Action

Ms. Crull alleges that Defendants are liable for failing to "exercise reasonable care in investigating claims, in alleging wrongdoing, in reasonably enforcing DSHS laws, in disclosing allegations, in protecting the privacy and providing due process of law to those in a position such as Plaintiff." ECF No. 1-1 at 6. Defendants argue that (1) Washington State does not recognize a claim for negligent investigation and, alternatively, that (2) the public duty doctrine precludes liability for Defendants' allegedly negligent conduct. ECF No. 29 at 23–24.

"In general, Washington common law does not recognize a claim for negligent investigation because of the potential chilling effect such claims would have on investigations." *Janaszak v. State*, 173 Wn. App. 703, 725 (2013). The exception to this general rule permits negligent investigation causes of action against DSHS caseworkers concerning statutorily mandated investigations into allegations of child abuse. *Lesley v. Dep't of Social and Health Servs.*, 83 Wn. App. 263, 273 (1996) (noting that "a specific statute provides that DSHS caseworkers have a duty to investigate. A cause of action for negligent investigation thus exists against DSHS caseworkers").

Ms. Crull argues that "Washington courts have recognized a cause of action for negligent investigation specifically against DSHS case workers where a

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 34

statutory duty to investigate exists." ECF No. 58 at 27. OFA is specifically tasked by statute to "[c]onduct independent and objective investigations of fraud and abuse." RCW 74.04.012(3)(a). Ms. Crull, however, mischaracterizes Washington State case law. Contrary to Ms. Crull's assertion, *Lesley* did not hold that a negligent investigation cause of action is permitted whenever an agency or official has a statutory duty to investigate. *Corbally v. Kennewick Sch. Dist.*, 94 Wn. App. 736, 740 (1999). In fact, "[n]o court has extended the DSHS caseworker exception." *Id.*

The statute at issue in *Lesley*, RCW 26.44.050, creates a duty by mandating that DSHS caseworkers "must investigate" reported allegations of child abuse. RCW 26.44.050; *Lesley*, 83 Wn. App at 273 (noting that RCW 26.44.050 "provides that DSHS caseworkers have a duty to investigate"). By contrast, RCW 74.04.012 merely instructs that OFA, as an administrative agency, "shall conduct independent and objective investigations." RCW 74.04.012(3)(a). RCW 74.04.012 sets out OFA's statutory objectives and purpose, while RCW 26.44.050 directly creates a duty for DSHS caseworkers to investigate allegations of child abuse. *Compare* RCW 74.04.012 *with* RCW 26.44.050. Washington State courts have consistently declined to expand the negligent investigation cause of action. S*ee Corbally*, 94 Wn. App. at 740. This Court will not break with that consensus.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 35

As a cause of action for negligent investigation is not cognizable against Defendants under Washington State law, Ms. Crull's cause of action for negligent investigation is **dismissed with prejudice**.

### D. Whether Genuine Issues of Material Fact Preclude Summary Judgment on Ms. Crull's Negligent Infliction of Emotional Distress Cause of Action

Ms. Crull alleges that Defendants are liable for negligent infliction of emotional distress. ECF No. 1-1 at 6. "A plaintiff may recover for negligent infliction of emotional distress if she proves duty, breach, proximate cause, damage, and 'objective symptomatology.'" *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 505 (2014) (quoting *Strong v. Terrell*, 147 Wn. App. 376, 387 (2008)). "[A] claimant must prove that her emotional distress is accompanied by objective symptoms and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Strong*, 147 Wn. App. at 388 (citing *Kloepfel v. Bokor*, 149 Wn.2d 192, 197 (2003)).

Ms. Crull has presented no objective evidence of medical symptomatology resulting from Defendants' alleged negligence. Although Ms. Crull notes that "Defendants' conduct . . . certainly [rises] to the level of negligence," ECF No. 58 at 35, negligent infliction of emotional distress requires more than a mere allegation of negligence. As such, Ms. Crull has failed to demonstrate a genuine

1    dispute of material fact as pertains to her negligent infliction of emotional distress

2    cause of action, which accordingly is **dismissed with prejudice**.

3    **E. Whether Genuine Issues of Material Fact Preclude Summary Judgment on Ms. Crull's Intentional Infliction of Emotional Distress Cause of**

4    **Action**

5    Ms. Crull alleges that Defendants are liable for intentional infliction of

6    emotional distress, or outrage. ECF No. 1-1 at 7. The tort of outrage requires:

7    "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of

8    emotional distress, and (3) actual result to plaintiff of severe emotional distress."

9    *Kloepfel*, 149 Wn.2d at 195. "The question of whether certain conduct is

10    sufficiently outrageous is ordinarily for the jury, but it is initially for the court to

11    determine if reasonable minds could differ on whether the conduct was sufficiently

12    extreme to result in liability." *Dicomes v. State*, 113 Wn.2d 612, 630 (1989).

13    "The first element requires proof that the conduct was 'so outrageous in

14    character, and so extreme in degree, as to go beyond all possible bounds of

15    decency, and to be regardedas atrocious, and utterly intolerable in a civilized

16    community.'" *Robel v. Roundup Corp.*, 148 Wn.2d 35, 51 (2002) (quoting

17    *Dicomes*, 113 Wn.2d at 630)). Severe emotional distress is such that "no

18    reasonable man could be expected to endure it." *Kloepfel*, 149 Wn.2d at 203

19    (quoting Restatement (Second) of Torts § 46 cmt. k (1965)).

20

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 37

1    Ms. Crull alleges that the following actions were sufficiently outrageous to

2    be tortious: (1) "that Mr. Bunge and Mr. Lowe knew that their investigation into

3    Ms. Crull's business would cause DEL to disqualify her license"; and (2) that

4    "Defendants knew and intended for the media to be present when DSHS and law

5    enforcement executed the search warrant on Ms. Crull's property." ECF No. 58 at

6    34–35.

7    The Court finds that Defendants' actions, as alleged by Ms. Crull, do not

8    approach the outer threshold of "outrage" as defined by the Supreme Court of

9    Washington. The allegations do not "shock the conscience or go beyond all sense

10   of decency." *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 755, 793 (2014). Further,

11   Ms. Crull does not testify that she suffered emotional distress at all, only alleging

12   that DSHS' tactics "severely damaged [her] reputation" and "severed [her]

13   livelihood." ECF No. 60 at 25. As Ms. Crull has failed to demonstrate a genuine

14   issue of material fact as to outrage, her intentional infliction of emotional distress

15   cause of action is **dismissed with prejudice**.

16   **F. Whether Genuine Issues of Material Fact Preclude Summary Judgment
     on Ms. Crull's Defamation Cause of Action**

17   Ms. Crull alleges that Defendants are liable for defamation for "[f]alse

18   allegations that Plaintiff was defrauding the State of more than $100,000." ECF

19   No. 1-1 at 8.

20

1    In Washington, "a defamation plaintiff must show four essential elements:

2  falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle*

3  *Times*, 96 Wn.2d 473, 486 (1981). "A defamation claim must be based on a

4  statement that is provably false." *Schmalenberg v. Tacoma News, Inc.*, 87 Wn.

5  App. 579, 590 (1997). "If the plaintiff is a private individual, a negligence standard

6  of fault applies." *Bender v. City of Seattle*, 99 Wn.2d 582, 600 (1983).

7    As to defamation, Washington State law recognizes both an absolute and a

8  qualified privilege:

> [a]n absolute privilege or immunity is said to absolve the defendant of
> all liability for defamatory statements. A qualified privilege, on the
> other hand, may be lost if it can be shown that the privilege has been
> abused. Absolute privilege is usually confined to cases in which the
> public service and administration of justice require complete immunity.
> Legislatures in debate, judges and attorneys in preparation or trial of
> cases, statements of witnesses or parties in judicial proceedings, and
> statements of executive or military personnel acting within the duties
> of their offices are frequently cited examples. Generally, some
> compelling public policy justification must be demonstrated to justify
> the extraordinary breadth of an absolute privilege.

15  *Id.* (internal citations omitted). By way of contrast, police officers only enjoy a

16  qualified privilege when releasing information to the public. *Id.* at 601 (qualified

17  privilege where news of plaintiff's arrest was made available to the news media,

18  and stories appeared in three newspapers as well as on television and radio).

19    Ms. Crull claims that Defendants reported to the news media and public that

20  Ms. Crull had engaged in a "pattern of fraudulent billing that . . . took place during

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 39

[a] five month of 2010." ECF No. 58 at 35. As evidence, Ms. Crull notes five

online news articles reporting on the LLLC.[9] *See* ECF No. 62-6, 7, 8, 9, 10. Of

those articles, two do not report any specific statements made by state officials. *See*

ECF No. 62-7 (article concerning distressed parents collecting children from

daycare); ECF No. 62-10 (quoting language from Ms. Crull's letter of

disqualification). Two others state that the reported information was obtained from

the affidavit that accompanied OFA's application for a search warrant. *See* ECF

No. 62-6 ("Based on the pattern of fraudulent billing the state claims took place

during that five month time frame in 2010, authorities believe, according to the

search warrant, that the child care center may have submitted other fraudulent

billings since Little Lambs Learning Center opened in 2008"); ECF No. 62-9

("Investigators searched the Little Lambs Learning Center . . . for evidence that its

owner has been overbilling the state for the subsidized day care, according to an

affidavit for a search warrant"). The final article attributes statements to DSHS

describing the investigation. *See* ECF No. 62-8.

---

[9] While there is evidence that Defendant Lowe spoke to the media, *see* ECF No. 40

at 4, Ms. Crull does not direct the Court's attention to any reported information

apart from the five online news articles.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 40

"Proof of knowledge or reckless disregard as to the falsity of a statement is required to establish abuse of a qualified privilege." *Parry v. George H. Brown & Assocs., Inc.*, 46 Wn. App. 193, 197 (1986). "To prove actual malice, plaintiff must show that the defendant in fact entertained serious doubts as to the truth of the statement; it is not shown by a mere failure to reasonably investigate." *Id.*

Ms. Crull claims that "Defendants abused their qualified privilege by acting with actual malice in contacting the news media ahead of their raid on Little Lambs and providing inflammatory statements to the media about the accusations against Ms. Crull." ECF No. 58 at 36. While Ms. Crull denies having defrauded the State and alleges that Defendants colluded with DEL in order to disqualify her license, she offers no evidence that demonstrates Defendants "in fact entertained serious doubts as to the truth" of any statement allegedly made to the media.

The Court finds that it is unnecessary to determine whether Defendants enjoyed an absolute or qualified privilege as, even if Defendants are protected by a lesser, qualified privilege, Ms. Crull has failed to demonstrate a genuine issue of material fact as to whether Defendants abused, and consequently forfeited, their privilege. Ms. Crull has not offered specific evidence demonstrating that Defendants acted with malice, instead demanding that the Court infer malice from the mere fact that Defendants allegedly discussed their investigation with the press.

Even assuming that Ms. Crull was not defrauding the State, the Court cannot infer that Defendants "entertained serious doubts" as to their allegations merely from the fact that those allegations may have been ultimately unsubstantiated. As Ms. Crull has offered no evidence demonstrating abuse, Defendants retain, at a minimum, a qualified privilege shielding them from liability for any allegedly defamatory statements made to the media concerning their fraud investigation. Ms. Crull's defamation cause of action is **dismissed with prejudice**.

**G. Whether Genuine Issues of Material Fact Preclude Summary Judgment on Ms. Crull's Invasion of Privacy Cause of Action**

Ms. Crull alleges that (1) Defendants falsely disclosed to the public that Plaintiff defrauded the State of over $100,000, thus placing her in a false light, and (2) Defendants intentionally intruded into Ms. Crull's seclusion by questioning Ms. Crull's daughter about issues unrelated to their investigation. ECF No. 58 at 8–9. Defendants' briefing only discusses the false light allegation. ECF No. 29 at 29. However, as both parties addressed the intrusion into seclusion allegation during oral argument, the Court will discuss the claim.

An invasion of privacy cause of action under a false light theory arises when "someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the

1   other would be placed." *Eastwood v. Cascade Broad, Co.*, 106 Wn.2d 466, 470–71

2   (1986).

3        Ms. Crull alleges that Defendants placed her in a false light by "falsely

4   disclosing to the public that Ms. Crull defrauded the State of over $100,000." ECF

5   No. 58 at 37. As evidence of falsity, Ms. Crull simply denies the allegations and

6   asserts that the lack of criminal charges is sufficient evidence to demonstrate actual

7   malice. *Id.* at 37–38. Similar to her defamation claim, Ms. Crull fails to provide

8   any evidence that Defendants "knew of or recklessly disregarded the falsity of the

9   publication" at the time the search warrant was executed in 2011. In the absence of

10  any such evidence, Ms. Crull has failed to demonstrate a genuine issue of material

11  fact concerning her invasion of privacy cause of action under a false light theory.

12       "One who intentionally intrudes, physically or otherwise, upon the solitude

13  or seclusion of another or his private affairs or concerns, is subject to liability to

14  the other for invasion of privacy, if the intrusion would be highly offensive to a

15  reasonable person." *Mark*, 96 Wn.2d at 497 (quoting Restatement (Second) of

16  Torts § 652B at 378 (1977)). "A person may sue the government for common law

17  privacy invasion if it intentionally intrudes upon his or her solitude, seclusion, or

18  private affairs." *Youker v. Douglas Cty.*, 178 Wn. App. 793, 797 (2014). In *Youker*,

19  the court affirmed a summary dismissal of an intrusion into seclusion invasion of

20  privacy cause of action where police officers were legitimately investigating a

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 43

1    report of a firearm in the home of a convicted felon. *See id.* The court noted that

2    "[t]he record contains no suggestion they acted under pretext." *Id.*

3          The Court finds that Ms. Crull has not alleged a cognizable invasion of

4    privacy, intrusion into seclusion, cause of action. Ms. Crull's claim of intrusion

5    into seclusion arises out of Defendants' alleged questioning of Ms. Crull's

6    daughter as part of their criminal investigation. ECF No. 1-1 at 9. Ms. Crull's

7    daughter was being interviewed in her capacity as one of the LLLC's employees.

8    Similar to the false light invasion of privacy cause of action, there is no indication

9    that Defendants had any pretextual or nefarious motive when questioning

10   Ms. Crull's daughter. The Court finds that Ms. Crull has failed to allege a

11   cognizable claim concerning her invasion of privacy cause of action based on

12   intrusion into seclusion. Ms. Crull's invasion of privacy cause of action is therefore

13   **dismissed with prejudice**.

14          **H. Whether Genuine Issues of Material Fact Preclude Summary Judgment
             on Ms. Crull's Tortious Interference with Business Relationships Cause
15           of Action**

16          Ms. Crull alleges that Defendants' investigation tortiously interfered with

17   her contractual relationships with her clients. ECF No. 1-1 at 7. Ms. Crull alleges

18   that Defendants investigated the fraud allegations using improper and overzealous

19   means. ECF No. 58 at 32. The crux of Ms. Crull's claim appears to be both that

20   Defendants unnecessarily involved the media when executing the search warrant,

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 44

ECF No. 59 at 28, 40–41,[10] and that Defendants knew their investigation would cause the disqualification of her license and actively continue to harass her by stalling their investigation. ECF No. 58 at 33.[11]

In Washington, tortious interference with contractual relations requires "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage." *Calbom v. Knudtzon*, 65 Wn.2d 157, 162–63 (1964). The interference must also arise from "either the defendant's pursuit of an improper objective of harming the plaintiff or the use of

---

[10] Ms. Crull states that Defendants did not make it clear to the media that the investigation was for fraud as opposed to child abuse. ECF No. 58 at 33. As the only news articles cited by Ms. Crull specifically mention the fraud investigation, *see* ECF No. 62-6, 7, 8, 9, 10, this allegation is unsupported by the record and will not be considered by the Court.

[11] Ms. Crull also discusses Defendants' alleged failure to both timely return her documents and provide her with a hearing. ECF No. 58 at 33. However, Ms. Crull fails to explain how these allegations are related to the tortious interference cause of action.

wrongful means that in fact cause injury to plaintiff's contractual or business

relationships." *Pleas v. City of Seattle*, 112 Wn.2d 794, 803–04 (1989).

For example, the City of Burien was found to have tortiously interfered with

a plaintiff by singling out the plaintiff's proposed development and using the

permitting process to delay the project. *Westmark Dev. Corp. v. City of Burien*, 140

Wn. App. 540, 558 (2007). The court found that improper delay was actionable as

an improper means of interfering with a plaintiff's business expectancy. *Id.* at 560.

Improper delay was also discussed in *Woods View II, LLC v. Kitsap County*, 188

Wn. App. 1, 34 (2015). In *Woods View*, the court distinguished *Westmark* as "[t]he

evidence revealed that Burien had incorporated in part to stop the development of

apartment buildings." *Id.* Further, the *Westmark* permit was delayed "for a period

of years when the typical response time was 30 to 120 days." *Id.* The court found

that a nineteen month delay on a decision that should take no more than 78 days

was not "extraordinary" as the plaintiff could not demonstrate that the delay was

improper. *Id.*

Ms. Crull alleges that Defendants have delayed concluding their

investigation by four years. However, it appears that Defendants concluded their

investigation on September 5, 2012, less than a year after the search warrant was

executed on the LLLC. *See* ECF No. 39-1. Further, Ms. Crull has offered no

evidence of any nefarious or improper motivation behind the alleged delay.

1   Ms. Crull instead argues that a lengthy delay is itself sufficient evidence of a

2   defendant's improper purpose. While extraordinary delay can form the basis of a

3   tortious interference cause of action, the plaintiff must demonstrate that the delay

4   occurred due to a defendant's improper motivation. *See Woods View*, 188 Wn.

5   App. at 34. As Ms. Crull has failed to present any evidence that any action by

6   Defendants was improperly motivated, she has failed to demonstrate a genuine

7   issue of material fact concerning whether the alleged delay constituted tortious

8   interference.

9       Ms. Crull further alleges that Defendants' excessive involvement of the

10  media was improper and constitutes tortious interference. As with the allegation of

11  extraordinary delay, Ms. Crull has submitted no evidence that Defendants' alleged

12  media contact was improper except for the fact that she wishes Defendants had not

13  involved the media at all. Ms. Crull has not offered any authority that official

14  media contacts concerning issues of public interest such as an ongoing criminal

15  investigation are improper. As such, Ms. Crull has failed to demonstrate a genuine

16  issue of material fact as concerns her tortious interference claim based on

17  Defendants' media contacts.

18      Ms. Crull has failed to demonstrate a genuine issue of material fact as to her

19  tortious interference with business relations cause of action. While Ms. Crull has

20  proffered a number of different theories, she has failed to provide any evidence

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 47

that the allegedly improper means were in fact improper. As such, Ms. Crull's

tortious interference with business relations cause of action is **dismissed with**

**prejudice**.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendants' Motion for Summary Judgment, **ECF No. 29**, is

    **GRANTED**. Plaintiff's Complaint, ECF No. 1-1, is **DISMISSED with**

    **prejudice**.

2.  **Judgment** is **ENTERED** in favor of Defendants.

3.  All pending motions, if any, are **DENIED AS MOOT**.

4.  All scheduled court hearings, if any, are **STRICKEN**.

The District Court Clerk is directed to enter this Order, to provide copies to

counsel, and to **close this case**.

**DATED** this 28th day of December, 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Judge